in her personal and official capacity as Franklin County Coroner. Arguments not to exceed 15 minutes per side. Mr. Close for the appellant. Good morning, your honors. If it pleases the court, I would like to reserve five minutes for rebuttal. And if it pleases the court and for those in attendance, the gravamen of this case is that the trial court aired when it found two male employees who were a morgue technician and a morgue technician supervisor having the same job duty and title and supervisor as the appellant, who was a morgue technician, released the wrong body to a funeral home after they incorrectly read the name of the funeral home on the release and did not examine the release order further. I'll just kind of cut to the chase a bit in my own thinking. They did read it, which your client didn't. That would seem to be a material distinction in their behavior. Oh, I think it is. I think it's worse. I think when you read something... Is it better just not to read it at all? That you have a better chance of getting the right outcome if you just don't even look at it than you do if you read it and you mix up a last name that's similar to the name of another firm? No, because that leaves out the precursor facts. The precursor facts were that the attendant arrived, said I'm here to pick up the baby, naming the baby, and an adult. I'm sorry, when you say the facts, it's the facts of this case. The facts of this case, yes. The precursor facts of this case. The appellant then asked the attendant, I don't have the releases, please get me the releases. We're familiar with the facts. I think therein lies the difference. Two faxes... I looked at the form that came in on the fax machine. The other guy did look at the form. It's a mistake that is perhaps more understandable than not looking at the form at all. It's Frank Smith Funeral Home versus Frank Hill. It was careless, but one can see how that might happen. I just want to give you the opportunity to explain why that mix up in reading the form is just as bad as not reading the form at all. As I started to explain, your honor, I think when you read a form, and there are two different names. It wasn't Jones and Johnson. It wasn't Johnson with an E or Johnson with an O. It was Smith and Hill. They picked up the wrong form. They read it. They called the wrong funeral home, but they had another bite at the apple. The other bite at the apple was that when the technicians showed up from the funeral home, from Smith Funeral Home, they looked at the form again and the form again had on it Hill. Again, they released the body to the Smith Funeral Home. You said earlier they released the wrong body, but isn't it that they released the right body, but to the wrong people? That's a distinction without a difference. At deposition, I specifically asked Dr. Gorniak, can you release the right body to the wrong home? The answer was no. It's still an error. I'm just saying it's a different error. It's not releasing the wrong body. It's releasing the right body to the wrong home. I understand, but to follow that logic somewhat pejoratively, we had two forms that were faxed in for the appellant. One of them was for the right body. The other one was for a body that was not to be released, but to the right funeral home. Again, I think that's a distinction without a difference. Can one consider the results, the fact that very different results happened and because of the mistake, something that happened that could bring a probrium upon the coroner's office as opposed to a mistake that was rectified. Can that be considered in this mix to distinguish the two situations? Well, Dr. Gorniak testified it wasn't, that that wasn't considered as part of her reason for termination, that she did not blame the appellant for either the unfortunate illegal cremation by the funeral home or the subsequent results. It was for the release of the body only. How about the lack of remorse? Was that part of the mix? I don't know that lack of remorse was ever discussed in the litigation in this matter. It may have. I don't recall it. Certainly, my client would have been remorseful. I thought she was criticized for having a cavalier attitude. I don't think that's the case, Your Honor. Okay. In fact, if she was, in the perception at the time, people react differently to emotional trauma. Whatever that would have been, the only thing I can say is that that was not my client's attitude throughout the entire practice of this litigation. But to go back to your question regarding that, this court has previously looked at comparable severity as the conduct involved in looking at Bobo v. United Parcel Service. And comparable severity would be releasing the wrong body. And they released the wrong body, both the morgue technician, the two males, and the appellant. The real question becomes is, is it a question of fact or is it a question of law for the court to decide whether or not those circumstances, i.e., reading a form but getting it wrong or not reading a form that you have already, is something that is not a question for the jury but is a question for the court. And I believe Bobo, in looking at that specifically and looking at Reeves, which they also cited, said when you have a material issue of fact, that that enhances the necessity to send this matter to the jury. And that's what the jury should have looked at. The jury should have gotten a chance to see whether or not the two circumstances, one, where you look at a form twice and still release the body, is warranting of, one, no discipline for one of the males and a written warning for the other. And number two, the appellant in this case, with no prior discipline of this kind whatsoever, being terminated for that. Especially where the appellant supervisor, Dr. Gorniak, testified that that was the only reason that she was left. Did Gorniak also testify as to why there wasn't greater discipline for Stanforth and Kessler? Yes, she did. She made the distinction that this court has already queried me about regarding having a release form for one body to be released and the difference was that there was no release form for the other body to be released. So just to be clear here, when we previously were talking about releasing the wrong body, it was wrong in the sense that there was no authority to release the body that your client released here. Whereas in the other case, there was authority to release this body, they just released it to the wrong people. Is that correct? That is correct. That was what their argument is. But I mean, is that also, at least the underlying facts, have I stated them correctly? Yes, the underlying facts are correct. Okay. In that there was a release form for the other body. There was no release form that was signed for the body that was released by the appellant. But again, it's how you phrase that particular question that determines whether or not you're going to have comparable conduct or not. If you're looking at the outcome, two bodies were released. Two bodies were released improperly. And there was not proper authentication nor proper documentation to release either of the bodies. But essentially you're saying, okay, you have two situations that have all of these different facts. And you're saying we only should look at the places in which the two of them are indeed similar and not look at the ones that aren't. Now, what's the law in terms of what does comparable mean? Doesn't it usually say it needs to be comparable in all relevant respects? All relevant aspects. But again, both of them. So then you're needing to say that it is irrelevant that in one case there was no release at all and in the other case there was a release form. It's relevant that there was a release, but to the extent that it goes to the issue of comparable seriousness in the outcome. And the outcome was that a body that shouldn't have gone out of there was taken out of there by persons who are not authorized to do it. You have to slice the outcome part pretty thin, though, to describe it the way you did. Because in one case, the right funeral home gets the body. So it's kind of no harm, no foul at the end of the day. In the others, the infant baby body gets cremated. Those are two big differences. And again, Your Honor, I would put forward to it that if that were a consideration by Dr. Gorniak, that might make a difference. I won't necessarily concede that difference, but it might make a difference. Her testimony wasn't that she did that. I see my time is up. You'll have your remaining time for rebuttal. Thank you. Good morning. Amy Hires. May it please the Court. Amy Hires on behalf of AFLI, Dr. Jan Gorniak, the Franklin County Coroner. Judge Boggs, I would like to first address your question regarding whether or not Dr. Gorniak distinguished the difference in discipline among Mr. Stanforth, Mr. Kessler, and the appellant in this case. The facts are undisputed in this case. There's never been a point during these proceedings where what happened below was ever anything that was in dispute. With respect to Mr. Stanforth, and I know I've said this forth in my brief, he actually did not even release a body. He did misread a body release form and called the wrong funeral home, but he did not even release the body. That was Mr. Kessler. He released the wrong body because the transport driver came in and asked for that body by name because Mr. Stanforth had called the wrong funeral home. So when he said he released the wrong body, isn't it really that he released the right body to the wrong people? And I'm glad you've made that distinction. And Judge Boggs, I'm wondering if you came up with that on your own because with all due respect to my opposing counsel, Dr. Gorniak did testify to that during her deposition. She was asked, she phrased it as they released the right body to the wrong funeral home, whereas the appellant released the wrong body to the wrong funeral home. And that's exactly what happened here. I will say with respect to the difference in discipline, Dr. Gorniak, and this is in the record, it is in one of her affidavits, I believe the affidavit in response, in our reply to appellant's response to our motion to summary judgment. In that affidavit, she explains that she thought it was understandable that Mr. Kessler would not doubt that the funeral home was asking for the right person since they knew the name. That is why, that is what prompted Dr. Gorniak to then require that transport drivers, when they come to pick up a body, have the body release forms with them. That is why appellant made Mr. Snodgrass, the transport driver in this case, call the funeral home to get the body release forms faxed over. So in this sense, not only did she violate the body release policy in the same way that Mr. Kessler did, in that she didn't verify that the transport driver was from the funeral home that the body was supposed to be released to, but she also didn't have a body release form at all. This wasn't a matter of, she had the body release form and she misread it. The body release form that came over on the fax, one was for the adult that she released and the other was for a different child. She just simply never looked at them. Can I ask a question? I understand that the difference in outcomes was not cited by Gorniak as a reason for her action, but have I misremembered the record? I thought that difference in attitude in reaction to their mistakes was also a difference, or maybe it wasn't. Is that true? Because counsel said that wasn't part of this. That is correct, Your Honor. Actually, with respect, and the documents are in the record regarding the release of R.L.'s body, which is what Mr. Sandsworth and Mr. Kessler did. Mr. Kessler was the one that actually released it, and I think if you read their statements regarding that, they accepted responsibility and said it was to them to make sure that they were releasing. Did Gorniak cite that as a reason, as an additional reason or not? Well, that was, I don't know if she did specifically yes to them. Again, her issue with them was that it was understandable to her why Mr. Kessler would not think a transport driver would come in from a funeral home and ask for someone by name if they didn't have the body release forms, which then prompted her to require that when they do come in they do have the body release forms. But with respect, though. So you're telling me that Summerfield's attitude after her mistake was presented to her was not part of this case? No, actually I was just getting that to contrast. I'm sorry, to contrast it with Mr. Sandsworth and Mr. Kessler's. No, that was something that Dr. Gorniak took into consideration. Her attitude during her predisciplinary hearing on this matter where the facts were presented to her and she was permitted then to tell her side of the story. She laughed during it. The name of the adult whose body was released is similar to the name of a singer. I don't want to say anyone's name right now. And she kept saying the wrong name and then just laughing. Oh, ha, ha, ha. I keep thinking it's the singer. She didn't know, actually, then the name of the body who she should have released. And I think all of that together. She never apologized. She never accepted responsibility for the actions. She continued to maintain that the transport driver came in and asked for the child's body by name. And Dr. Gorniak... It was disputed because this is a summary judgment case. And that recitation you just gave of her behavior, is any of that disputed? I don't think it can be by the record. The record of the predisciplinary hearing is in the record. There is an audio tape of it and it has been transcribed. I was actually asking whether this was part of the stated reason by Gorniak for what her action was or is the only thing that she stated in her reason was the release of the body, period. That is the only reason that she set forth in the 124 order. Okay. Specifically as to the violation of the body release form and the fact that she released it without having the form at all. What you call the 124 order, that's the firing document? Yes. Thank you, Your Honor. Am I right that as a result of the Kessler incident, policies were changed to a certain degree so that when she made her errors, they were in addition in violation of this new policy? Yes, Your Honor. It wouldn't have been the case with Kessler. Is that correct? Exactly. The Kessler situation is what prompted Dr. Gorniak to then require transport drivers to have the body release forms with them when they came to pick up the bodies. It's undisputed that appellant knew this. It's undisputed that she knew she had to follow this policy. That is why she had the transport driver call the funeral home to fax the body release forms. So when you say it's required that the transport driver have the form with him, he really didn't. Right. He shows up, they fax it over, and in effect, you might say, gives it to him and gives it back. So now it's been delivered to her by the transport driver's home. Is that fair? Well, kind of, but she never took them off the fax machine. She never looked at the body release forms on the fax machine. Okay, so in that sense, she violated the policy that the transport driver must have a form and give it to you. Since if you never look at it, it's like they didn't give it to you. Exactly, Your Honor. That is exactly our point. You can stop whenever you want. I was actually just going to say if the panel does not have any further questions of me, I will just rest on my brief. Okay. Thank you, Counsel. Thank you. Dr. Gorniak would ask, though, that you affirm the District Court's granting of summary judgment in her favor. Thank you. Mr. Close, you have five minutes for rebuttal. Again, Your Honor, and thank you for the rebuttal time. Several matters in terms of looking at the distinction. First of all, it suggests the issue of the fax that came across the machine. There was, in fact, a release form there. The release form was from the named funeral home, but it had the name of the wrong person on it. I did not address this in my brief simply because it was not addressed prior in any question. If she didn't look at it, what difference does it make what it said? What would have been the outcome if she had looked at it and just simply read the wrong name? Because, as Apolea has pointed out, Dr. Gorniak said it was understandable to her that a driver who showed up asking for and naming a body to be released by name wouldn't have the form for that release. That's exactly what happened to the appellant. And yet she didn't get that same understanding from Dr. Gorniak. Well, except, am I right, that now the policy is that the transport driver is supposed to have the form. So she asked for it to be faxed over. She never looks at it. Isn't that exactly equivalent to the driver not giving you the form? It's like the transport driver has it in his pocket, and you never ask him for it, and you never look at it. It's a violation of this policy, which wasn't the policy earlier. Your Honor, again, I think that's cutting it tight. Am I right factually about the situation, though? The factual argument that you've put forward is absolutely correct. She did not look at that. But whether she looked at it or not, and whether they looked at it and misread it, that's comparable seriousness in terms of what the outcome was that the body was to be released. She's not saying in her memo contra for summary judgment, this is my memo for summary judgment, I want to win because, what she's saying is, no, there's material issues of fact here regarding the comparable seriousness based on the outcome. And I believe I briefed it in drawing the analogy that two employees, equal status, take out the company cars. And one of them signs out the wrong car, and the other doesn't sign out a car at all. And both of them get into an accident. And one of them is fired because they didn't sign out the car, and the other one is not fired but given a warning because they didn't sign out the car but signed out the wrong one. That sounds quite comparable, yeah. Right. And what I'm saying is, that's not the outcome. The outcome was, if you're in an accident, what does signing out the car have to do with the accident? The issue with the accident is, who's at fault? If the accident is the fault of the person driving the vehicle, then you have an issue. Here, as in that scenario, you look at what's the greater fault? Who's at fault? What was the conduct? And that's a jury question. That's not the question for the court to answer. In fact, the court talked about the qualitative difference. Well, when you have qualitative difference, I don't see how you get around weighing evidence to come up with a qualitative difference under Rule 56. Likewise, I don't see how you get around a qualitative difference by taking the credibility of the witnesses into account regarding that qualitative difference because we're not basing it on facts. If we were, we'd have a quantitative difference. Does a change in policy make an indisputable difference in that something goes wrong at a company, they give out warnings, and then they put in a policy and says, if anybody does this again, you're fired, and then the person's fired. I mean, wouldn't that be a real difference? Well, I think, yeah, and not to split hairs, Your Honor, but I think does it again is a thing. This was my client's first time, and this was the first time this ever happened to her. No, I mean, they could say our new policy is zero tolerance. If any employee does something like this again, they're gone. Wouldn't that be a difference? That could be the policy, yes. I don't necessarily know that that's applicable in this case. I was wondering, I meant a difference that makes the two people, one before the warning, one after the warning, and a different employment treatment, and so to make them not similarly situated. Yes, Your Honor. I'm out of time, but if I may, I'd like to answer that. I think in terms of what the company says is then the standard, you have to look at the comparable seriousness of the conduct. Whatever it is that the company has said that we are now having this policy in order to prevent the outcome of certain things happening or in a way to make sure certain things happen, that you look at that seriousness of the conduct. Whether it's past conduct or not, it's outcome-based, and here the outcome was two bodies got out of that morgue, and there was not proper paperwork. Thank you, Counsel. Was that enough for you? You've more than answered my question. Thank you, Your Honor. Thank you, Counsel. I would ask that you overturn the decision. The case will be submitted.